# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMARLE HILL,
    *Plaintiff*,

      v.                                No. 3:20-cv-00426 (JAM)

ALICIA *et al.*,
    *Defendants*.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

The plaintiff in this case has alleged that he was subject to the use of excessive force while he was a prisoner in the custody of the Connecticut Department of Correction ("DOC"). The defendants have moved for summary judgment on the ground that the plaintiff did not exhaust administrative remedies as required under the Prison Litigation Reform Act. I agree and will therefore grant the defendants' motion and deny the plaintiff's cross-motion for summary judgment.

### BACKGROUND

Plaintiff Jamarle Hill has filed a civil rights complaint under 42 U.S.C. § 1983 against several officials of the Connecticut Department of Correction ("DOC") for use of excessive force during a "heated confrontation" over a phone call to his attorney.[1] At the time of the alleged conduct, Hill was a pretrial detainee in the custody of DOC.[2]

Hill claims that on March 9, 2020, he got into a confrontation with Officer Rossini over a failed call to his attorney.[3] The confrontation quickly escalated into a shoving match, at which

---

[1] Doc #13 at 5.
[2] Doc. #14 at 1.
[3] Doc. #13 at 5.

point Officer Sandone intervened and punched Hill.[4] Defendants Pergy, Chevalier, Jones, Williams, Harris, and Hunter began to pepper spray Hill and "punch and kick" him while he lay face down on the floor in a corner of the room.[5] Officer Rossini screamed to the other officers that "this is the guy who molested his child" and attempted to sexually assault Hill before being stopped by the other officers.[6]

I entered an initial review order allowing Hill's claims under the Fourth and Fourteenth Amendments to proceed against defendants Correctional Officers Rossini, Sandone, Pergy, and Williams, as well as Captains Chevalier and Jones. *See Hill v. Alicia*, 2020 WL 1914930, (D. Conn. 2020). I found that the "[d]efendants' allegedly repeated malicious acts, including kicking and pepper spraying Hill while he was lying on the floor, served no legitimate purpose," and that the alleged "repeated punching and kicking, culminating in an attempted sexual assault, . . . make it plausible that defendants' actions were excessive in relation to that purpose." *Id.* at *4.

Hill then filed a motion to amend the complaint to add three more officers.[7] Attached to the amended complaint is a copy of a Disciplinary Process Summary Report filed after the confrontation on March 9.[8] The packet includes a description of the altercation, photographs of Hill after the confrontation, Hill's own handwritten account of the incident, and the ultimate conclusion that Hill was found guilty of the offense of assault on a DOC employee.[9] Hill has also attached what appears to be a disciplinary report from an unrelated incident (albeit one also

---

[4] *Ibid.*
[5] *Ibid.*
[6] *Id.* at *5-6.
[7] Doc. #26.
[8] *Id.* at 10-17.
[9] *Ibid.*

involving a telephone call) on March 25, 2020.[10] I granted Hill's motion to add the additional defendants for this claim of excessive force.[11]

The defendants have now filed a motion for summary judgment on the ground that Hill did not exhaust administrative remedies.[12] They have attached to their motion an affidavit of administrative remedies coordinator Donald Acus, a copy of the version of Administrative Directive 9.6 which would have been operative at the time of the alleged conduct, a document showing Hill's transfers while detained by the Department of Correction, and a "Northern CI Logbook" documenting inmate grievances received between February 26 to May 12, 2020.[13]

Hill has filed a cross-motion for summary judgment.[14] He has attached to the motion pages excerpted from the formal disciplinary report originally attached to the amendment to his complaint.[15] The motion reiterates his allegations regarding the March 9 confrontation, and "object[s] to the . . . defendants . . . false statement that [he] did not exhaust [his] [a]dministrative remedies."[16]

## DISCUSSION

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable factfinder to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close

---

[10] *Id.* at 14-15.
[11] Doc. #27.
[12] Doc. #76.
[13] *See* Doc. #76-3, Doc. #76-4, Doc. #76-5, Doc. #76-6.
[14] Doc. #81.
[15] *Id.* at 6-8.
[16] *Id.* at 1.

contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

Because Hill is a *pro se* party, his pleadings and submissions on summary judgment must be given a liberal construction. "The policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (*per curiam*).

Still, a party's *pro se* status does not relieve the party of the obligation to respond to a motion for summary judgment and to support the party's claims with evidence as the rules require. *See Nguedi v. Fed. Reserve Bank of New York*, 813 F. App'x 616, 618 (2d Cir. 2020). If a plaintiff does not submit evidence to dispute the evidence adduced by defendants to support their motion for summary judgment, then a court may fully credit the defendants' evidence. *See, e.g.*, *Spicer v. Burden*, 564 F. Supp. 3d 22, 27 (D. Conn. 2021).

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *See Ross v. Blake*, 578 U.S. 632, 638-39 (2016). It applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The DOC's grievance procedure for general matters is set forth in Administrative Directive (AD) 9.6.[17] *See Riles v. Buchanan*, 656 F. App'x 577, 579-80 (2d Cir. 2016) (describing requirements of AD 9.6). It requires that prisoners first pursue informal resolution, although for general grievances, prisoners "may" pursue verbal resolution but, if that fails, "shall" submit an Inmate Request Form.[18] A prison official must respond to the written request within 15 business days.[19]

If the response is unsatisfactory or if there is no response, prisoners must then file a formal Level 1 grievance on an Inmate Administrative Remedy Form within 30 calendar days of the incident that gave rise to the grievance.[20] An official must respond within 30 business days of receipt of the Level 1 grievance.[21]

The third stage is the filing of a Level 2 grievance on an Inmate Grievance Appeal Form, CN 9604, to the District Administrator within 5 calendar days of receiving the unsatisfactory disposition or after no response.[22] An official must respond within 30 business days of receipt of the Level 2 grievance.[23] Under certain circumstances, a prisoner may within 5 calendar days of receipt of that disposition file a Level 3 grievance.[24]

AD 9.6 also provides specific procedures for appealing inmate disciplinary actions. AD 9.5(17). To appeal a guilty finding at a disciplinary hearing, an inmate must complete CN 9602,

---

[17] Defendants filed a copy of the version of AD 9.6 that was in effect at the time of the events alleged in Hill's complaint. See Doc. #76-4. Because AD 9.6 has since been updated, *see* CONN. DEP'T OF CORR., *Administrative Directive Chapter 9.6 Inmate Administrative Remedies*, https://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf (last accessed September 20, 2022) (noting that it supersedes the version dated August 15, 2013), I will cite to the version of AD 9.6 that the defendants have attached as an exhibit to their motion.
[18] Doc. #76-4 at 5.
[19] *Ibid.*
[20] *Id.* at 6.
[21] *Id.* at 7.
[22] *Id.* at 6, 7.
[23] *Id.* at 7.
[24] *Ibid.*

Inmate Administrative Remedy Form, within 15 calendar days of the notice of decision.[25] The

District Administrator must respond to any appeal within 15 business days of receipt.[26]

The records filed by the defendants indicate that Hill never filed a formal grievance based

on the March 9 incident. The affidavit of Captain Donald Acus indicates that Hill filed no

grievances between March 9, 2020 and May 12, 2020—well past the 30-day window mandated

by AD 9.6.[27] The Grievance Log similarly records no grievances from Hill between February 26,

2020 to May 12, 2020.[28]

In his cross-motion for summary judgment, Hill claims that he did file a "griev[a]nce of

the incident decision," to which the grievance coordinator never responded.[29] But he provides no

affidavit or supporting documentation and does not cite to anything in the record to substantiate

this claim. See Otero v. Purdy, 2021 WL 4263363, at *10 & n.9 (D. Conn. 2021) (prisoner's

conclusory allegation that he exhausted administrative remedies not sufficient to survive

summary judgment); Chambers v. Johnpierre, 2016 WL 5745083, at *7 (D. Conn. 2016) (same).

Furthermore, AD 9.6 is clear that a prisoner who receives no initial response to their

Level 1 grievance must file a Level 2 grievance. Even if Hill had filed a grievance regarding the

incident on March 9, there is no evidence that he filed a Level 2 Grievance, and so his failure to

appeal the lack of a response would still amount to a failure to exhaust. See Simms v. Grady,

2022 WL 1094077, at *6 (D. Conn. 2022).

Hill seems to suggest that he has satisfied the exhaustion requirement by means of his

involvement in disciplinary proceedings stemming from the incident on March 9.[30] Some courts

---

[25] Id. at 10.
[26] Ibid.
[27] Doc. #76-3 at 3 (¶¶ 19-20).
[28] Doc. #76-6.
[29] Doc. #81 at 5.
[30] Id. at 6-7.

have found that an inmate may satisfy the exhaustion requirement by filing an appeal from a disciplinary report. *See Ramirez v. Allen*, 2018 WL 5281738, at *7 (D. Conn. 2018) ("[A]ppealing the guilty finding does exhaust the plaintiff's administrative remedies" with respect to due process claims arising out of alleged improprieties at the initial disciplinary hearing); *Otero*, 2021 WL 4263363, at *8-9 (where plaintiff's "grounds for his disciplinary appeal" were "essentially the same as his Fourteenth Amendment claim asserted in this action, . . . [p]laintiff's disciplinary appeal of his guilty finding sufficiently provided a fair and full opportunity for DOC to adjudicate the substance of his Fourteenth Amendment procedural due process claims").

But Hill does not point to any evidence that he appealed his disciplinary report. Nor has he otherwise demonstrated that an appeal or other administrative remedies were unavailable to him. *See Ross*, 578 U.S. at 643-44 (exhaustion is not required where an administrative procedure is unavailable, meaning it "operates as a simple dead end," is so opaque that it is incapable of use by the ordinary prisoner, or if prison administrators "thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation"). Moreover, the bottom of the disciplinary report states: "You may appeal a finding of guilty by a hearing officer within 15 days."[31]

The record shows that Hill has also filed grievances for unrelated issues which do use the proper forms under AD 9.6.[32] The evidence submitted by Hill himself thus demonstrates that he was informed as to the proper procedures by which to appeal his disciplinary report, and also that the prison grievance system was available to him and that he knew how to use it.

---

[31] *Id.* at 7.
[32] *See, e.g.*, Doc. #7 at 1, Doc. #11 at 5-6.

Accordingly, I conclude that Hill did not properly exhaust his available administrative remedies. He has produced no evidence showing he fully appealed the initial disciplinary finding and has otherwise offered no evidence of any grievance filed in connection with the March 9 incident.

A final question is whether this action should be dismissed with or without prejudice. Courts may dismiss a complaint without prejudice if a prisoner can properly exhaust his administrative remedies and then reinstitute suit. *See Weis v. Lamont*, 2022 WL 3646201, at *3 (D. Conn. 2022). Pursuant to AD 9.6, an inmate must file a grievance within 30 days of the incident. Because far more than 30 days have elapsed since March 9, 2020, Hill is no longer able to file a timely administrative grievance. Therefore, I will dismiss his complaint with prejudice.

## CONCLUSION

For the reasons stated above, the Court GRANTS the defendants' motion for summary judgment (Doc. #76) and DENIES Hill's cross-motion for summary judgment (Doc. #81). The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 17th day of January 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

8